FRED L. DICKEY, KENNETH McMULLEN DICKEY AND W. LAURENCE DICKEY, EXECUTORS OF THE ESTATE OF WALTER S. DICKEY, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51643. Promulgated August 29, 1935.

*Maurice H. Winger, Esq.,* for the petitioners.
*Shelby S. Faulkner, Esq.,* for the respondent.

OPINION.

TURNER: The petitioners contend that the disposition by Dickey of the fixed assets and current assets and their acquisition by the W. S. Dickey Clay Manufacturing Co. were two separate transactions and that no gain or loss was realized in either case, on the ground that the exchange of fixed assets for capital stock falls within the provisions of section 203 (b) (4)[1] of the Revenue Act of 1926, while the current assets were sold at cost.

---

[1] SEC. 203. (b) (4)   No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

The respondent argues that Dickey exchanged property for stock and cash, thereby bringing the transaction within the provisions of section 203 (d) (1) of that act,[2] and, applying the provisions of that section, the gain, if any, is taxable to the extent of the cash received.

The petitioners' theory of the case completely ignores certain terms of the contracts entered into between Dickey and the banks, on the one hand, and Dickey and the company, on the other. The agreement of June 6, 1925, with the banks contemplated that the corporation to be organized would acquire "assets of every nature" relative to Dickey's clay properties. It specified that current assets would always be maintained in a minimum amount of $1,000,000 and that the current assets would at least equal 200 percent of current liabilities. In the proposal of June 11, 1925, Dickey conditioned the transfer of his fixed assets for stock upon the company's binding itself to purchase his current assets. In its acceptance the company specifically agreed to assume and perform all the obligations and conditions set up in the offer, and the agreements were carried out according to their terms.

Considering what was actually done, and not what the parties might have designed or proposed to do, *United States* v. *Phellis*, 257 U. S. 156, we must hold that the steps in this transaction were but parts of the whole whereby Dickey exchanged all his assets for cash and stock. *Herman Adaskin*, 8 B. T. A. 460, and *W. A. Hoult*, 23 B. T. A. 804, cited and relied on by petitioners, turn upon their own particular facts, which are different from those here existing. The exchange of property here was not solely for stock, but for stock and cash. The necessity for several related steps can not alter the ultimate results. Dickey's intent, ascertained from a fair construction of his contracts, points to the related steps as parts of one transaction. *First Seattle Dexter Horton National Bank et al., Executors*, 27 B. T. A. 1242; affd., 77 Fed. (2d) 45. Section 203 (d) (1), *supra*, is accordingly applicable and the gain, if any, from the transaction is taxable to the extent of the cash received.

Section 202 (a) of the Revenue Act of 1926 provides that "gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivision (a) or (b) of section 204 * * *." In this case there is no dispute as to the basis for determining the gain from the property so exchanged. It has been stipulated that the cost to Dickey of the fixed assets was $5,740,346.25, while the cost of the current assets was

---

[2] SEC. 203. (d) (1)  If an exchange would be within the provisions of paragraph (1), (2), or (4) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

$2,423,944.48, or a total of $8,164,290.73. In section 202 (c) of the same act it is stated that "the amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received." It is thus apparent that the amount realized by Dickey is the sum of the $2,423,944.48 in cash, the $2,000,000 liability which was assumed and paid by the W. S. Dickey Clay Manufacturing Co., and the fair market value of the capital stock received. The first two items·are definite and fixed, leaving for determination the fair market value of the stock. ·

In valuing the stock of a closely owned corporation, no particular method of valuation or reasoning is controlling, but the value of stock in such cases must be arrived at by consideration of the facts and circumstances in each particular case. *James Couzens*, 11 B. T. A. 1040; *George M. Wright*, 19 B. T. A. 541; affd., 50 Fed. (2d) 727.

In this case there were no sales of stock on which a valuation might be based. The facts also show that the stock was never offered for sale and that no bids for it were received. The respondent has determined that the fair market value of the stock on the date received was $7,163,055.07, which amount was also its book value, which in turn was the net appraised value of the fixed assets as of December 31, 1924, shown by the appraisal of the American Appraisal Co. dated May 4, 1925, with adjustments to June 30, 1925. The petitioners call attention to the fact that the amount shown by the appraisal referred to was not the fair market value of the assets in question, but was termed the sound value of the property to a going concern. It is also pointed out that the valuation of the plants and equipment was based on reproduction costs. Our attention is also called to the fact that the respondent's valuation rests solely on the appraised value of the fixed assets without regard to other assets of the company or the increase from $2,000,000 to $4,500,000 in the indebtedness which constituted a first lien against those assets. It is also contended that the average earnings from the operation of the properties by Dickey for the 5-year period preceding their transfer to the W. S. Dickey Clay Manufacturing Co. will not support the value arrived at by the respondent. It is pointed out that a capitalization of average net earnings, after making allowance for an increase of the bonded indebtedness to $4,500,000, for a 2½-year period at 8 percent, would reflect a value of $6,330,083.88; that capitalization of average earnings for a 4-year period, subject to the same conditions and at the same rate, would reflect a value of $5,085,524.37; while a similar capitalization of the average net earnings for a 5-year period would reflect a value of $4,394,169.63, and if a capitalization

rate of 10 percent for the 5-year period should be used, the value reflected would be $3,515,335.70. It is further suggested that these computations, indicating a value so much lower than that determined by the respondent, are based on average net earnings from operations, which utilized not only the fixed assets but the current assets as well.

Considering all of the facts presented, including the appraised value of the fixed assets, the cost of these assets to Dickey, the average net earnings from his operations for a period of five years prior to the organization of the W. S. Dickey Clay Manufacturing Co., the bonded indebtedness against the assets of the corporation, the restriction on the sale of Dickey's stock, and the fact that there were no sales of stock or offers of or bids therefor, we are of the opinion that the value determined by the respondent is excessive and have found as a fact that the fair market value of the stock received by Dickey in connection with the transfer of his assets to the W. S. Dickey Clay Manufacturing Co. was $5,000,000.

*Decision will be entered under Rule 50.*